564 S.E.2d 98

**Jeffery MINNICH, Plaintiff,**

v.

**MED–WASTE, INC., and Incendere, Inc., Defendants.**

**No. 25468.**

Supreme Court of South Carolina.

Heard Jan. 24, 2002.

Decided May 20, 2002.

Coming B. Gibbs, Jr., of Gibbs & Holmes, and Paul N. Urrichio, III, both of Charleston, for plaintiff.

Gray Thomas Culbreath, of Collins & Lacy, P.C., of Columbia, for defendants.

Justice PLEICONES.

We accepted the following question on certification from the United States District Court:

> Does the Firefighter's Rule bar an emergency professional, such as a firefighter, police officer, or public safety officer, who is injured as a result of performing his or her duties, from recovering tort-based damages from the party whose negligence caused the injury?

## FACTS

The District Court made the following factual findings:

Jeffrey Minnich ("Plaintiff") was employed by the Medical University of South Carolina ("MUSC") as a public safety officer. While working in this capacity, Plaintiff assisted in loading medical waste from the premises of MUSC onto a tractor-trailer truck owned by Defendant Med–Waste, Inc. Plaintiff noticed the unoccupied truck begin to roll forward, toward a public street. Plaintiff ran to the truck, jumped inside, and stopped the truck.

Plaintiff alleges he suffered serious injuries, proximately caused by the acts or omissions of the defendants' employees, for which he seeks to recover damages. The defendants assert that Plaintiff's claims are barred by the firefighter's rule. The firefighter's rule is a common law doctrine that precludes a firefighter (and certain other public employees, including police officers) from recovering against a defendant whose negligence caused the firefighter's on-the-job injury.

## ISSUE

Does the Firefighter's Rule preclude Plaintiff's recovery?

## ANALYSIS

While a number of states have adopted the firefighter's rule in some form,[1] there is no definitive pronouncement from this Court either adopting or rejecting the rule.

---

**1.** *See Moody v. Delta Western, Inc.*, 38 P.3d 1139, 1140 n. 2 (Alaska 2002) (counting cases); *Waggoner v. Troutman Oil Co.*, 320 Ark. 56, 894 S.W.2d 913, 914–15 (1995) (counting cases).

In *Taylor v. Palmetto Theater Co.*, 204 S.C. 1, 28 S.E.2d 538 (1943), the plaintiff, a Columbia city firefighter, responded to a fire alarm at a building adjoining the Palmetto Theater ("Theater"). While performing his duties as a firefighter he was hurrying through a walkway owned by the Theater when he fell into an inadequately guarded pit and suffered injuries. According to the complaint, although the walkway was privately-owned, the Theater generally made it open to the public, and knew of the dangerous condition of the pit. The firefighter appealed after the trial court granted the Theater's motion to strike substantial portions of the complaint, including those alleging the walkway was open to the public.

In reversing the trial court, the Court distinguished between private property and property generally open to the public:

Upon a careful analysis of the complaint ... it alleges an invitation extended to the general public to use this passageway or walkway, and that relying on this invitation and the fact that such use was made thereof by the general public with the at least implied acquiescence of the [Theater], the [firefighter] entered thereupon while in the performance of his duties as a fireman, and suffered ... injuries.... In other words, that the plaintiff entered upon the walkway or passageway as a member of the general public, although in the discharge of his duties as a fireman, and was therefore an invitee or licensee.

In the circumstances alleged in the complaint, the fact that the [plaintiff] was a fireman, and in the discharge of his duties as such, should not limit his cause of action to the right or permission to enter the premises of [the Theater] extended by the law. Of course, upon a trial of the case the [firefighter] will have to establish ... that the general public (as the complaint alleges), 'used the alley in the rear of the [Theater's] premises, as well as the ... passageway ..., with the knowledge, acquiescence and consent of the [Theater]' at the place where the [firefighter] alleges he was injured; *otherwise any cause of action the [firefighter] may have against the [Theater] for his injuries will be governed by the law applicable to a fireman or other municipal employee who goes upon privately owned premises in the discharge of his duty.*

*Id.* at ——, 28 S.E.2d at 541 (emphasis supplied). Despite its allusion thereto, the *Taylor* Court, did not define "the law applicable to a fireman or other municipal employee ..." injured while discharging his duty on private property. The italicized language above, however, suggests that the Court would apply a different standard of care to the Theater based upon the firefighter's status as either an invitee or a licensee.

A later decision of this Court implies that a police officer can recover from a negligent party when the officer is injured while discharging his duties.

In *Gardner v. Columbia Police Dep't*, 216 S.C. 219, 57 S.E.2d 308 (1950), the Court held that a police officer, injured while on duty, could not maintain a worker's compensation action against his employer after having previously recovered from, and having executed a release in favor of, the negligent tortfeasor. By releasing the negligent trucking company, Gardner "deprived his employer ... of the right of subrogation to enforce against the [negligent party] any legal liability for the injuries suffered by [Gardner] under ... the Workmen's Compensation Act." *Id.* at 224, 57 S.E.2d at 310.

The facts in *Gardner* suggest that the officer's injury did not occur on private property, but on a public street. Thus, *Gardner* implies no basis for a distinction arising out of the police officer's status as an invitee or licensee, and does not mention *Taylor, supra*. *Gardner* implicitly suggests, however, that a police officer may recover from a negligent party for injuries suffered during the discharge of the officer's duties.

Finding no definitive answer to the certified question in the case law of this state, we examine the various rationales advanced in support of the rule, and its applications and limitations in other states.

*Rationales for the Firefighter's Rule*

The common law firefighter's rule originated in the case of *Gibson v. Leonard*, 143 Ill. 182, 32 N.E. 182 (1892). There, the Illinois Supreme Court held that a firefighter who entered private property in the performance of his job duties was a licensee, and as such, the property owner owed the firefighter a duty only to "refrain from willful or affirmative acts which are injurious." *Id.* at 189, 32 N.E. 182. Practically, this meant that a firefighter, injured while fighting a blaze on

private property, could not recover tort damages from the property owner whose ordinary negligence caused the fire.[2]

A number of courts reason that police officers and firefighters, aware of the risks inherent in their chosen profession, have assumed those risks. *See e.g. Armstrong v. Mailand,* 284 N.W.2d 343 (Minn.1979) (firefighter assumes all risks of the job); *Berko v. Freda,* 93 N.J. 81, 459 A.2d 663 (1983) (nature of police work requires officers to recognize inherent dangers; police officer assumes the risks of the job). As such, the firefighter or police officer should not be allowed to recover when injured as a result of confronting these known and accepted risks.

A third rationale advanced is public policy. The Supreme Court of Virginia, in *Pearson v. Canada Contracting Co.,* 232 Va. 177, 349 S.E.2d 106, 111 (1986),[3] cited two fundamental policies in support of that state's firefighter's rule: First, injuries to firemen and policemen are compensable through workers' compensation. It follows that liability for their on-the-job injuries is properly borne by the public rather than by individual property owners. Second, firemen and policemen, unlike invitees or licensees, enter at unforeseeable times and at areas not open to the public. In such situations, it is not reasonable to require the level of care that is owed to invitees or licensees.

Still other courts reason that the public fisc pays to train firefighters and police officers on the ways to confront dangerous situations, and compensates them for doing so. If these public employees were permitted to bring suit against the

---

**2.** Those courts relying on premises liability principles to support their firefighter's rule found this rationale problematic. For instance, the Maryland Court of Appeals noted that a rule based on the premises liability theory could be applied only in the landowner context. *Flowers v. Rock Creek Terrace Ltd. Partnership,* 308 Md. 432, 520 A.2d 361, 366–67 (1987). The court further observed the legal anomaly resulting from a rule based on this rationale: other public employees, such as postmen and building inspectors—who often enter land pursuant to legal authority rather than express invitation of the landowner—were entitled to due care, while their counterparts in the fire and police departments were not. *Id.*

**3.** *Pearson* contains an extensive overview of the firefighter's rule and its historical development.

taxpayers whose negligence proximately caused injury, the negligent taxpayer would incur multiple penalties in exchange for the protection provided by firefighters and police officers. *See Kreski v. Modern Wholesale Elec. Supply Co.*, 429 Mich. 347, 415 N.W.2d 178, 187 (1987).

*The Various Forms of the Rule*

Not only have courts been unable to agree on a consistent rationale for the rule, they have not been able to agree on the proper parameters for the rule. A number of courts which recognize the firefighter's rule as a viable defense to negligence claims allow recovery for willful and wanton conduct resulting in injury. As one court observed, "a tortfeasor who acts wilfully and wantonly is so culpable that the fireman's rule ought not to preclude the injured officer from suing the egregiously culpable wrongdoer." *Miller v. Inglis*, 223 Mich. App. 159, 567 N.W.2d 253, 256 (1997).

Courts have allowed police officers and firefighters to recover for injuries resulting from an act of negligence unrelated to the specific reason for which the officer or firefighter was originally summoned. As stated by the Supreme Court of New Jersey:

> The core of the "fireman's rule" is that a citizen's ordinary negligence that occasioned the presence of the public safety officer shall not give rise to liability in damages for the injuries sustained by the officer in the course of the response to duty.... The corollary of the rule is that independent and intervening negligent acts that injure the safety officer on duty are not insulated.

*Wietecha v. Peoronard*, 102 N.J. 591, 510 A.2d 19, 20–21 (1986) (citation omitted) (Police officers were injured while investigating a traffic accident when drivers negligently hit parked police cars; officers could pursue action against drivers whose negligence occurred subsequent to officers' presence at the scene). *See also Terhell v. American Commonwealth Assoc.*, 172 Cal.App.3d 434, 218 Cal.Rptr. 256, 260 (1985) ("Having an unguarded hole in the roof was not the cause of [the firefighter's] presence at the scene, and the firefighter's rule has never been applied to negligence which did not cause the fire."). According to one commentator, all jurisdictions allow recovery under these circumstances. *See* Jack W. Fischer, *The Con-*

*necticut Firefighter's Rule: 'House Arrest' for a Police Officer's Tort Rights,* 9 U. Bridgeport L.Rev. 143, 149 (1988).

More recently, a number of state legislatures have acted to limit or abolish the firefighter's rule. For instance, in 1987, only one year after the Virginia Supreme Court's decision in *Pearson, supra,* the Virginia legislature passed a statute providing that:

> An owner or occupant of real property containing premises normally open to the public shall, with respect to such premises, owe to firefighters ... and law-enforcement officers who in the performance of their duties come upon that portion of the premises normally open to the public the duty to maintain the same in a reasonably safe condition or to warn of dangers thereon of which he knows or has reason to know, whether or not such premises are at the time open to the public.

> An owner or occupant of real property containing premises not normally open to the public shall, with respect to such premises, owe the same duty to firefighters ... and law-enforcement officers who he knows or has reason to know are upon, about to come upon or imminently likely to come upon that portion of the premises not normally open to the public....

Va.Code Ann. § 8.01–226 (Michie 2001).[4] *See also* Cal. Civil Code § 1714.9 (West 2001) (allowing police officers and firefighters to recover where negligence occurred after negligent party knew of officer's or firefighter's presence, or where negligent act or omission violated statute, or was independent of reason officer or firefighter was summoned); Nev.Rev.Stat. Ann. § 41.139 (LEXIS L. Publg.2001) (firefighter or police officer may maintain action for injuries suffered as a result of another's willful acts, as well as for negligent acts occurring after the person who caused the injury knew or should have known of the police officer's or firefighter's presence).

Effectively, the State of New York has statutorily abolished the firefighter's rule by providing that:

> In addition to any other right of action or recovery otherwise available under law, whenever any police officer

---

4. While not stated on the face of the statute, one could infer that the legislature acted in response to *Pearson.*

or firefighter suffers any injury, disease or death while in the lawful discharge of his official duties and that injury, disease or death is proximately caused by the neglect, willful omission, or intentional, willful or culpable conduct of any person or entity, other than that police officer's or firefighter's employer or co-employee, the police officer or firefighter suffering that injury or disease, or, in the case of death, a representative of that police officer or firefighter may seek recovery and damages from the person or entity whose neglect, willful omission, or intentional, willful or culpable conduct resulted in that injury, disease or death....

N.Y. General Obligation Law § 11–106 (McKinney 2001). While the New York statute forecloses a tort action against a co-worker or an employer,[5] it virtually eliminates the firefighter's rule as it pertains to all other third-party tortfeasors, and allows police officers and firefighters to recover for ordinary negligence.

New Jersey similarly limits the scope of the firefighter's rule by statute. *See* N.J. Stat. Ann. § 2A:62A–21 (West 2001) (whenever any law enforcement officer or firefighter suffers injury while in the discharge of his official duties and that injury is the result of the neglect, willful omission, or willful or culpable conduct of any person or entity, other than that law enforcement officer's or firefighter's employer or co-employee, the injured law enforcement officer or firefighter may seek recovery from the person or entity whose neglect, wilful omission, or wilful or culpable conduct resulted in that injury). *See also* Minn.Stat. Ann. § 604.06 (West 2001) (the fireman's rule shall not operate to deny any peace officer or public safety officer a recovery in *any action at law* or authorized by statute); Fla. Stat. Ann. § 112.182 (West 2001) (common-law firefighter's rule abolished).

---

**5.** The legislative history of the New York statute indicates that the legislature excepted actions against employers or co-employees in an effort to foster, or at least do nothing to undermine, the teamwork so essential in these professions. We note that the employer/co-employee exception is also consistent with existing worker's compensation principles.

## CONCLUSION

As illustrated above, those jurisdictions which have adopted the firefighter's rule offer no uniform justification therefor, nor do they agree on a consistent application of the rule. The legislatures in many jurisdictions which adhere to the rule have found it necessary to modify or abolish the rule. The rule is riddled with exceptions, and criticism of the rule abounds.[6]

Against this backdrop, we answer the certified question in the negative. South Carolina has never recognized the firefighter's rule, and we find it is not part of this state's common law. *See Gardner, supra.* In our view, the tort law of this state adequately addresses negligence claims brought against non-employer tortfeasors arising out of injuries incurred by firefighters and police officers during the discharge of their duties. We are not persuaded by any of the various rationales advanced by those courts that recognize the firefighter's rule. The more sound public policy—and the one we adopt—is to decline to promulgate a rule singling out police officers and firefighters for discriminatory treatment.

CERTIFIED QUESTION ANSWERED.

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

**6.** *See e.g.,* Jay Berger, *Note: Has the Michigan Firefighter's Rule Gone Up in Smoke? An Analysis of the Wilful and Wanton Exception,* 44 Wayne L.Rev. 1555 (1998) (concluding the wilful and wanton exception points out the inequities embodied in the firefighter's rule); David L. Strauss, *Comment: Where There's Smoke There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years,* 1992 Wis. L.Rev. 2031, 2061 (1992) (concluding that implementation of the rule has led to a "morass of legal analysis that has left judges and juries in the precarious position of continuously having to determine how far the rule reaches and who fits within its many ambiguous exceptions"); Louie A. Wright, *The Missouri "Fireman's Rule": An Unprincipled Rule in Search of a Theory,* 58 UMKC L.Rev. 329 (1990) (arguing the common-law firefighter's rule is outdated and an indulgence in legal fiction).